United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 12, 2007**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 06-10552

_____

MONCRIEF OIL INTERNATIONAL INC.,

Plaintiff-Appellant,

v.

OAO GAZPROM; OAO ZAPSIBGAZPROM; OAO SEVERNEFTEGAZPROM,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas, Fort Worth

_____

Before REAVLEY, JOLLY, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This is an appeal from the district court's dismissal of Plaintiff's claims against foreign defendants. Because we agree that personal jurisdiction is lacking as to each defendant, we affirm.

I. <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

This case arises from a business dispute between a Texas plaintiff, Moncrief Oil International Inc. ("Moncrief"), and Russian defendants OAO Gazprom ("Gazprom"), OAO Zapsibgazprom ("Zapsib"), and OAO Severneftegazprom ("Severn") (collectively "the

Gazprom defendants"). The district court dismissed Moncrief's complaint for lack of personal jurisdiction, and Moncrief appeals.

Moncrief is a Texas corporation that identifies investments in unexplored and/or underdeveloped foreign oil and gas projects around the world. The Gazprom defendants are organized under the laws of the Russian federation and their principal place of business is in Moscow, Russia. Gazprom is the majority shareholder of Zapsib, and wholly owns Severn as a subsidiary.

Zapsib obtained a license from Russian authorities to produce natural gas from the Yuzhno-Russkoye gas field (the "Y-R Field") in 1993, and commenced negotiations with Moncrief to work together to develop the field. Zapsib and Moncrief subsequently entered into three agreements: the Investment Agreement (1997), Framework Agreement (1998), and Cooperation Agreement (1998). As part of the Cooperation Agreement, Zapsib transferred the Y-R license to Severn, and agreed to provide Moncrief a 20% interest in that enterprise in exchange for securing financing, providing technical expertise, and investing $120 million. Additionally, the Cooperation Agreement provided that all disputes arising out of the agreement would be subject to mandatory arbitration in Russia before the International Arbitration Court, and that Russian law would apply to any disputes.

Shortly after the Cooperation Agreement, Gazprom temporarily lost control of Zapsib and Severn because of internal fraud. After Gazprom regained control, Moncrief worked directly with the parent

company regarding performance of the various agreements in 2000. Gazprom allegedly assured Moncrief that it would continue working with them and honor those prior agreements. In 2004, however, Gazprom announced that it had partnered with German entities to develop the Y-R field.

Moncrief filed suit in federal court for declaratory relief, breach of contract, promissory estoppel, and negligent misrepresentation, with estimated damages of several billion dollars. The court dismissed the case for lack of personal jurisdiction. Moncrief appeals. The Gazprom defendants argue that the district court correctly dismissed the case. In the alternative, they assert that Moncrief's claims are subject to a binding arbitration clause and that the case should be dismissed under the doctrine of *forum non conveniens*.

II. <u>STANDARD OF REVIEW</u>

We review a district court's dismissal for lack of personal jurisdiction *de novo*. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). The district court denied the Gazprom defendants' motion to dismiss for mandatory arbitration and *forum non conveniens* as moot given its finding as to the lack of personal jurisdiction, and thus never reached those issues. This Court may affirm on any ground supported by the record, however, even if it was not reached by the district court. *See, e.g., United States v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th

3

Cir. 2003); *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001).

III. <u>DISCUSSION</u>

In order for personal jurisdiction to satisfy Due Process requirements, a plaintiff must show that (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945); *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).[1] We find that the Gazprom defendants did not establish minimum contacts.

A. Minimum Contacts

A plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state. *Hydrokinetics, Inc. v. Alaska Mech., Inc*., 700 F.2d 1026, 1028 (5th Cir. 1983). A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state

---

[1]The Texas long-arm statute extends personal jurisdiction to the permissible limits of the Due Process Clause, and so we only need to determine whether the exercise of personal jurisdiction in this case would comport with those federal guarantees. *Latshaw*, 167 F.3d at 211; *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

4

does not establish minimum contacts. *Latshaw,* 167 F.3d at 211; *Hydrokinetics*, 700 F.2d at 1028.

An exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986). Otherwise, jurisdiction could be exercised based only on the fortuity that one of the parties happens to reside in the forum state. *Id.* To avoid that, we evaluate multiple factors in determining whether a defendant purposefully established minimum contacts within the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction. *Id.* at 476. We consider each of the Gazprom defendants in turn.[2]

### i. Zapsib

Moncrief argues that Zapsib established minimum contacts by (1) entering into contracts with Moncrief, (2) knowing from the outset that Moncrief is a Texas resident, (3) acknowledging and approving of Moncrief's substantial performance in Texas, and (4)

---

[2]Personal jurisdiction can be of either the general or specific variety, *Mink v. AAAA Develop., LLC*, 190 F.3d 333, 336 (5th Cir. 1999), but Moncrief only alleges specific jurisdiction, meaning that the defendants must have purposefully directed their activities at residents of the forum, and the litigation results from alleged injuries arising out of or related to those activities. *See Burger King*, 471 U.S. at 472; *Bullion*, 895 F.2d at 216.

sending an executive to visit Texas—at Moncrief's expense—in furtherance of that performance. The plaintiffs do not dispute that all the agreements were executed in Russia, with a Russian corporation, concerning a Russian joint venture, to develop a Russian gas field. Further, the Cooperation Agreement provided for arbitration in Russia, under Russian law.

As stated above, merely contracting with a resident of Texas is not enough to establish minimum contacts. *Latshaw*, 167 F.3d at 211. Moreover, a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas. *Hydrokinetics*, 700 F.2d at 1029. Nevertheless, Moncrief cites *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376 (5th Cir. 2003), and *Mississippi Interstate Express, Inc. v. Transpo Inc.*, 681 F.2d 1003 (5th Cir. 1982), to argue that minimum contacts exist in a breach of contract case where a nonresident enters into a contract with a known resident of the forum state, if it is reasonably foreseeable that the resident will perform a material part of its obligations in the forum state and thereby cause business activity in the forum state. *See Central Freight*, 322 F.3d at 382 ("a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant)

in the forum state").

Reading that language broadly, Zapsib surely could have foreseen that Moncrief might perform many of its duties in Texas. Nevertheless, this argument ultimately fails. As we noted in *Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985), our finding of jurisdiction in *Transpo* was supported not only by foreseeability, but also by the fact that the forum state was "clearly the hub of the parties' activities." 681 F.2d at 1008–09. That was not true in *Patterson*, nor in this case, where the parties negotiated and prepared key elements abroad (Mexico and Russia, respectively).

Mere foreseeability, standing alone, does not create jurisdiction. In addition to the hubs of activity lying within the forum states, *Transpo* and *Central Freight* differ from the present case in other ways, including a plaintiff that only existed within the forum state, and a defendant actively engaged in the various activities taking place therein. *Transpo*, 681 F.2d at 1005, 1009, 1011. In *Central Freight*, the contract contemplated that the plaintiff would make shipments from Texas on behalf of third-party Texas customers. The plaintiff's Texas location was strategically advantageous to the defendant and was the basis for the agreement, *see Cent. Freight*, 322 F.3d at 382, suggesting that the defendant had purposefully availed itself of doing business in Texas. In contrast, Moncrief agreed to perform analysis, without any

7

discussion of *where* it would be done.  The contract was silent as to location.  Given the nature of the work, there's no indication that the location of the performance mattered, and it is not clear how performance of that work would "cause business activity." Moncrief, though *based* in Texas, is an international company engaged in various projects around the world.  Moncrief even established an office in Russia specifically for this relationship.

Perhaps most significantly, the Cooperation Agreement—which cemented the earlier agreements between the parties—included clauses calling for mandatory arbitration in Russia, under Russian law.  In *Central Freight,* this Court gave weight to the *absence* of a choice of law provision that might have given the defendant reason to believe it could not be haled into court in the forum state.  322 F.3d at 383 ("Although the . . . Agreement apparently does not contain a forum selection clause, a choice of law clause, or some other provision that could have put [the defendant] on specific notice that it might be amenable to suit in Texas, neither does the Agreement contain any provision that would give [the defendant] reason to think that it could not be haled into court in Texas . . . .").

The arbitration and choice of law clauses found in the Cooperation Agreement suggest that Gazprom meant for the undertaking to remain wholly Russian in nature.  *See Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1069 (5th

8

Cir. 1992) (stating that forum-selection and choice-of-law clauses "indicate rather forcefully" that defendant "did not purposefully direct its activities towards Texas").  Moncrief's Texas location was irrelevant, and this case thus falls into the category of cases discussed in *Holt Oil,* where mere fortuity that one company happens to be a Texas resident, coupled with that company's unilateral performance, is not enough to confer jurisdiction.  *See Holt Oil*, 801 F.2d at 778.

The only remaining alleged contact for Zapsib is the 1997 visit of its executive, Mr. Nikiforov, to Texas.  The visit, at the invitation of Moncrief, helped to further planning and negotiations, but no agreement was established during the trip.  In *Hydrokinetics*, we found that the defendant's two physical visits to Texas did not create jurisdiction, in part because the defendant did not regularly do business in Texas, and because most of the negotiations appeared elsewhere.  700 F.2d at 1028–29.  The same is true here, and Mr. Nikiforov's visit did not create jurisdiction.

## ii.  *Gazprom*

Moncrief's argument for jurisdiction over Gazprom stems from its vice chairman, Mr. Yurlov's visit to Texas in 2002 to speak at a U.S./Russia Energy Summit.  During that visit, Yurlov met with Moncrief and allegedly misrepresented that, despite internal changes within the company, Gazprom would continue to honor and work in furtherance of the already existing agreements.

9

Moncrief's initial complaint stated only a breach-of-contract claim against Gazprom, which would require a showing of minimum contacts in order to find that there is personal jurisdiction. The district court, however, accurately described Yurlov's visit to Houston as "fortuitous," and the visit and meeting were certainly not sufficient to establish personal jurisdiction: Yurlov was visiting for purposes of the summit, and his meeting with Moncrief was purely incidental to that. Perhaps realizing that personal jurisdiction might not otherwise exist for Gazprom, Moncrief later amended the complaint to add a claim for negligent misrepresentation, a tort, thus giving rise to the argument that personal jurisdiction exists because Gazprom committed a tort in Texas.

"When a nonresident defendant commits a tort within the state . . . that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state . . . to exercise personal adjudicative jurisdiction . . ." *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999). Therefore, even without other contacts, jurisdiction would exist if Gazprom committed a tort while in the state. Moncrief, however, failed to state a claim of negligent representation.

The elements of negligent misrepresentation include providing false information upon which a plaintiff relies. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). We have further

10

clarified that a negligent misrepresentation claim must allege misstatement of an "existing fact." *Accord Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996). The misrepresentation alleged by Moncrief concerned the *future* behavior of Gazprom—that Gazprom would *continue* to honor the agreements—rather than an existing fact.

Moncrief also argues that there is "effects jurisdiction" based on the representation made in Texas, as well as a subsequent promise made in Russia. "Effects" jurisdiction is premised on the idea that an act done outside the state that has consequences or effects within the state can suffice as a basis for personal jurisdiction if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct. *See Guidry*, 188 F.3d at 628. Such jurisdiction is rare. We have expressly declined to allow jurisdiction for even an intentional tort where the only jurisdictional basis is the alleged harm to a Texas resident. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d at 870 (5th Cir. 2001). Moreover, the alleged promise made in Russia succumbs to the same problem as the one made in Texas: the complaint alleged a misstatement of a future event, rather than misstatement of an already existing fact. It therefore fails as a negligent misrepresentation claim, and cannot give rise to jurisdiction as a tort.

*iii. Severn*

11

Moncrief argues that the jurisdictional contacts of the parent company, Gazprom, are attributable to Severn given that Severn is wholly owned and controlled by Gazprom. Because we find that no minimum contacts exist for Gazprom, and because Moncrief does not allege any contacts for Severn independent of Gazprom, we need not consider whether Gazprom's contacts, if existent, would be attributable to Severn.

B. Traditional Notions of Fair Play and Substantial Justice

Given our finding that no minimum contacts exist to exercise jurisdiction over the Gazprom defendants, we do not need to consider whether such jurisdiction would violate traditional notions of fair play and substantial justice. We also do not need to reach the Gazprom defendants' arguments concerning binding arbitration and *forum non conveniens*.

IV. <u>CONCLUSION</u>

For the foregoing reasons, we AFFIRM the district court's dismissal.