**LANGSTON, SWEET & FREESE, P.A., Sweet & Freese, P.L.L.C. and Richard Freese, Appellants,**

v.

**Cletus P. ERNSTER, III, Cletus P. Ernster, III, P.C. and R.G. Taylor, II, P.C. & Associates, Appellees.**

No. 09–07–435 CV.

Court of Appeals of Texas, Beaumont.

Submitted on Feb. 14, 2008.

Decided May 8, 2008.

Jeffrey M. Tillotson, P.C., Richard Smith, Amanda R. Tyler, Lynn Tillotson & Pinker, L.L.P., Dallas, for Appellants.

Ernest W. Boyd, Jeremy R. Stone, Corey J. Seel, Mehaffy Weber, P.C., Lance Christopher Kassab, Houston, for Appellees.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

In this lawsuit over division of litigation expenses, two law firms and an individual attorney filed special appearance motions challenging the trial court's jurisdiction over them. The trial court denied the motions, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(7) (Vernon Supp.2007). We conclude the trial court has jurisdiction over the law firms but not the individual attorney.

### THE LITIGATION

The law firms of Taylor, Davis & Ern-

ster (TDE),[1] Langston, Sweet & Freese, P.A. (LSF), and Danks, Simon & Teeuwissen (DST) entered into a letter agreement in 2000 concerning Dillard's Department Store. The three firms agreed they would bear all costs and expenses of litigation against Dillard's in proportion to their respective contingent fee interests.[2]

Cletus Ernster of TDE filed lawsuits against Dillard's in Texas. He later demanded payment of expenses incurred in litigating those lawsuits from the other parties to the letter agreement.

Ernster sued appellants for breach of contract, fraud, and negligent misrepresentation, and sought a declaratory judgment. Robert G. Taylor II P.C. also sued appellants on these causes of action, and added promissory estoppel, unjust enrichment, quantum meruit, and joint enterprise liability.[3] Ernster's and Taylor's pleadings encompass the letter agreement and its breach, and representations that Dennis Sweet allegedly made in Texas to Ernster, Taylor, and intervenor Legal Wizards. Appellants Richard Freese, LSF, and S & F contend Texas courts do not have either specific or general jurisdiction over them.[4]

**1.** It appears from the record that at the time of the filing of Ernster's third-party petition, Taylor and Ernster were no longer in the same firm.

**2.** Effective March 1, 2005, Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct was amended to add specific requirements for attorneys who refer cases to other attorneys who divide the fees on those cases. *See* Tex. Disciplinary R. Prof'l Conduct 1.04(f) (adopted by order of October 17, 1989, effective Jan. 1, 1990, amended by order of Jan. 28, 2005, effective Mar. 1, 2005, and reprinted in Tex. Gov't Code Ann., tit.2, subtit. G, app. A, art. 10, § 9, Rule 1.04 (Vernon Supp.2007)). The parties entered into the 2000 letter agreement prior to the amendment to Rule 1.04, and no party argues the agreement is unenforceable.

## PERSONAL JURISDICTION

 The plaintiff must plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007). The nonresident defendant then bears the burden of negating all bases of jurisdiction in those allegations. *Id.* When a trial court does not issue findings of fact with its special appearance ruling, all facts supported by the evidence and necessary to support the ruling are presumed to have been found by the trial court. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). The existence of personal jurisdiction is a question of law an appellate court determines *de novo. Id.* at 794.

 Texas trial courts may exercise *in personam* jurisdiction over a nonresident defendant if (1) the Texas long-arm statute, section 17.042 of the Texas Civil Practice and Remedies Code, authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042(1) (Vernon 1997);

**3.** Mickey Washington, a Texas resident, filed suit in Texas against Ernster, whom Sweet described as Ernster's "now partner/ex-employee[.]" Washington sought a declaratory judgment that he is not liable for the debts of Ernster or the firm. Ernster answered Washington's lawsuit and filed a third-party petition against, among others, LSF, Sweet & Freese, Richard Freese, Dennis Sweet, and Robert G. Taylor II P.C. Taylor filed a cross-claim against LSF, S & F, Dennis Sweet, and Freese.

**4.** Dennis Sweet did not file a special appearance. Richard Freese is an Alabama resident. LSF and S & F are Mississippi law firms.

*Moki Mac,* 221 S.W.3d at 574. Section 17.042(1) authorizes personal jurisdiction over a nonresident defendant who does business in Texas. *IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 596 (Tex.2007). A nonresident "does business" in Texas if it: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this State; (2) commits a tort in whole or in part in this State; or (3) recruits Texas residents for employment inside or outside of Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). The list in section 17.042 is not exclusive. *BMC Software,* 83 S.W.3d at 795. "[T]he statute's broad, doing-business language reaches only as far as these federal due-process criteria permit: (1) the defendant must have established minimum contacts with the forum state, and (2) the assertion of jurisdiction must comport with 'traditional notions of fair play and substantial justice.'" *IRA Res., Inc.,* 221 S.W.3d at 596 (citing *BMC Software,* 83 S.W.3d at 795). Appellants challenge only the minimum contacts prong of the due process requirements.

■■■ The defendant's contacts with the forum state may give rise to either general or specific jurisdiction. *BMC Software,* 83 S.W.3d at 795. General jurisdiction is established when the defendant has made continuous and systematic contacts with the forum. *Id.* at 796. The United States Supreme Court has explained that where contacts are less pervasive, the court may exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Under specific jurisdiction, a defendant must have made minimum contacts with Texas by purposefully availing itself of the privilege of conducting activities here, and its liability must arise from or be related to those contacts. *See Moki Mac,* 221 S.W.3d at 576 (citing *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002)).

■■■ In considering purposeful availment, (1) only the defendant's forum-state contacts matter, not those of anyone else; (2) the contacts must be purposeful, not simply random, isolated, or fortuitous; and (3) a nonresident defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction, thereby impliedly consenting to its laws. *IRA Res., Inc.,* 221 S.W.3d at 596 (citing *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005)). For specific jurisdiction, there must be a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *See Moki Mac,* 221 S.W.3d at 585.

### THE ISSUES

Appellants contend they are not subject to specific jurisdiction because there is no substantial connection between their forum contacts with Texas and the litigation's operative facts. They argue the drafting of the contract in Texas is merely a unilateral activity that does not confer jurisdiction, and the contract's focus is on lawsuits filed in Mississippi, not Texas. Appellants contend Dennis Sweet's contacts in Texas were not in performance of the letter agreement and therefore not substantially connected to the litigation's operative facts. They argue further that the exchange of communications between appellees and Dennis Sweet is mere fortuity. Appellants also assert they are not subject to general jurisdiction because of the lack of continuous and systematic contacts with Texas.

## "DILLARDS DEPARTMENT STORE LITIGATION LETTER AGREEMENT"

Appellants argue the letter agreement is the litigation's operative fact and makes Mississippi the "hub of the parties' activities." The contract agreement is as follows:

Pursuant to the telephone conversation between Anthony Simon, Dennis Sweet and Cletus Ernster on Wednesday, July 12, 2000, Danks Simon & Teeuwisson shall receive 20% of the gross attorney fees on all cases against Dillards Department Store brought in by the Danks Simon & Teeuwissen law firm (example—Consuelo Jones) and 10% of the gross attorney fees on all other Dillards cases involved in this litigation.

Taylor, Davis & Ernster, Langston, Sweet & Freese and Danks Simon & Teeuwissen shall bear all costs and expenses in proportion to their respective contingent fee interests in the Dillards Department Store cases.

The Dillards litigation refers to cases being brought against Dillards Department Store arising out of the wrongful detention, false imprisonment, negligence and/or profiling of Dillards patrons.

Filing of all pleadings will be handled through Dennis Sweet's office.

The agreement is signed by Ernster on behalf of TDE, Dennis Sweet on behalf of LSF, and Simon on behalf of DST. An Exhibit A, also signed by the parties, provides three examples of division of attorney fees—one of the subjects of the letter agreement. One example cites referral fees to be paid to Arkansas, Texas, or Louisiana attorneys.

The three firms agreed to proportionally bear all costs and expenses in litigation against Dillard's, which the agreement defines as referring to cases being brought against Dillard's on a specific subject matter. Appellants argue the agreement encompasses only those litigation expenses associated with cases filed in Mississippi by Dennis Sweet's office, and rely on the last sentence in the agreement, which states that "[f]iling of all pleadings will be handled through Dennis Sweet's office." Appellees contend the letter agreement covers cases filed in Texas; they also argue appellants are improperly attempting to have this Court rule on the merits of the underlying litigation in an appeal from a special appearance ruling.

The ultimate issue in this appeal is one of federal due process, not contract law. Appellants argue the contract cannot be the basis for personal jurisdiction in Texas because the contract makes Mississippi the "hub" of the parties' activities. No state is mentioned in the letter agreement, however.[5] The agreement does not state the location of Dennis Sweet's office or where the litigation is to be filed. From the record, it appears Dennis Sweet has offices in both Mississippi and Alabama, and Sweet is licensed in Alabama, Mississippi, and Washington D.C. Sweet explained in his deposition that he was admitted *pro hac vice* in a case against Dillard's in Beaumont, Texas, and he came to Beaumont for a June 2004 trial. He testified the presence of his initials on the paperwork in the Texas case indicated the pleadings filed in the Texas court came from his file. It is apparent that the agreement, as reflected in the examples regarding division of the attorney fees, covers claims originating in Texas and re-

---

**5.** An "Exhibit A," attached to the Letter Agreement and executed at a different time, sets out examples of attorney fee distributions and references attorneys from Texas, Arkansas, and Louisiana.

ferred by Texas attorneys. The agreement does not provide that the only litigation expenses required to be shared are those incurred in lawsuits filed in Mississippi.

Appellants argue their activities in Texas were not undertaken in furtherance of the letter agreement, and therefore are not substantially connected to the litigation's operative facts. They rely on *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir.2007). In *Moncrief Oil*, one of the parties to the contract was a Texas resident, but "all the agreements were executed in Russia, with a Russian corporation, concerning a Russian joint venture, to develop a Russian gas field." *Id.* at 310, 312. Under those facts, the Fifth Circuit Court of Appeals held the "mere fortuity that one company happens to be a Texas resident, coupled with that company's unilateral performance, is not enough to confer jurisdiction." *Id.* at 313 (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir.1986)).

This case presents significantly different jurisdictional contacts. Sweet, on behalf of his firm, was involved in the litigation against Dillard's in Texas. Sweet does not contest the Texas court's exercise of jurisdiction over him in his individual capacity. He testified he thought Ernster, a Texas resident, drafted the contract; the litigation project was Ernster's; and "[Ernster] was running it." Sweet also testified he came to Houston and Beaumont on the cases against Dillard's. He testified he came to Ernster's office in Texas in April 2005 to discuss litigation expenses that are now the subject of this lawsuit. At that time, Sweet met with Ernster[6] and heard a presentation from a contractor, Legal Wizards, concerning the work it had done on the cases and the money the law firms allegedly owed for that work. Sweet testified he had authority to make representations to appellees about the common expenses under the agreement.

Subsequently, Ernster and Taylor traveled to Sweet's Mississippi office for further discussion of the issue. As a result of that visit, Sweet wrote to Legal Wizards in Houston. In that letter, he accepted full responsibility for $36,612.15 in expenses and stated he would pay Legal Wizards's bill by October 4, 2005. Sweet did not pay the bill.[7] Legal Wizards intervened in the lawsuit and sought payment from Sweet, LSF, S & F, and Ernster and his firm.

Sweet testified he spent the night in a Beaumont hotel during a trial in Texas, and incurred expenses paid for "by Cletus Ernster or someone[.]" Sweet acknowledges he did not reimburse Ernster, Taylor, or Washington for the hotel room. After the Beaumont trial against Dillard's ended in a mistrial, Sweet conducted the depositions of three witnesses in the case. Sweet further testified that Omar Nelson, Sweet's associate, came to Texas to work with Ernster and Mickey Washington on the cases against Dillard's. Omar Nelson was working for LSF and S & F. Sweet affirmed that if transcripts reflect Nelson was present in Texas on the litigation against Dillard's, Sweet sent him.

---

**6.** Sweet is uncertain who was present at the meeting. At one point, he said he met with Ernster, Taylor, and "the Legal Wizards representative." At another point, Sweet testified he met with Ernster, Mickey Washington, and Legal Wizards.

**7.** Appellants contend that because the trial court dismissed the claims of intervenor Legal Wizards prior to the denial of appellants' special appearances, Sweet's alleged misrepresentations cannot form the basis for specific jurisdiction. The "Order of Partial Dismissal" dismissed Legal Wizards's claim against Sweet, LSF, and S & F, but not against Ernster and his firm.

Sweet's and Nelson's Texas contacts, on behalf of LSF and later S & F, were purposeful and for the advancement of the litigation against Dillard's: Sweet and Nelson were present in Texas working on the litigation and incurring litigation expenses in those cases. The operative facts of the litigation include the 2000 letter agreement, the representations made by Sweet regarding litigation expenses, the presence of defendants and their representatives in Texas working on the cases against Dillard's, and defendants' communications with Texas residents regarding the disputed litigation expenses. Defendants' alleged liability—payment of defendants' share of litigation expenses in the cases against Dillard's—arises from or is related to those forum contacts. Appellants sought benefits, advantages, and profits from their activities in Texas. A substantial connection exists between the forum contacts and the operative facts of the litigation.

### S & F

S & F argues it was not a party to the letter agreement and should not be deemed to have established minimum contacts with Texas. Sweet testified LSF "separated" in October or November 2003, and S & F was formed. The litigation was then handled on a day-to-day basis by the new firm of S & F, with LSF retaining its interest in the litigation. Sweet testified he had primary responsibility for any work involving Dillard's, and he took it with him when he went to S & F and then later to Sweet & Associates. Sweet indicated his correspondence regarding the dispute over litigation expenses was written on behalf of S & F and LSF.

The litigation flowed from LSF to S & F; Sweet continued to work on the litigation and made trips to Texas on cases involving Dillard's while he was an S & F

partner. *See Nikolai v. Strate,* 922 S.W.2d 229, 240 (Tex.App.-Fort Worth 1996, writ denied) (An attorney's contacts, undertaken on behalf of a professional corporation in which the attorney was a shareholder, were imputed to the professional corporation for jurisdictional purposes.). S & F purposely availed itself of the privilege of conducting activities in Texas, and its alleged liability arises from or is related to those contacts.

### RICHARD FREESE

Richard Freese argues that he was not a party to the letter agreement and did not establish minimum contacts with Texas. Freese was a partner in LSF and S & F, but we find no evidence he worked on the cases in Texas, or that he performed any work on or acted as the partnerships' agent for cases against Dillard's. Though Sweet's actions may be imputed to the partnership entities, those actions are not, without more, imputed to Freese individually for personal jurisdiction purposes. *See generally PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 174 (Tex.2007) ("[P]ersonal jurisdiction involves due process considerations that may not be overridden by statutes or the common law."); *see Asshauer v. Farallon Capital Partners, L.P.,* No. 05–05–01219–CV, —— S.W.3d ——, ——, 2008 WL 367619, at *9 (Tex.App.-Dallas Feb.12, 2008, no pet. h.) ("[A] partnership's contacts are not imputed to partners with no individual contacts with the forum state."). Other jurisdictions have treated this issue similarly. *See generally Sher v. Johnson,* 911 F.2d 1357, 1366 (9th Cir. 1990) (Discussing California and Florida law, the court stated that "a partner's actions may be imputed to the partnership for the purpose of establishing minimum contacts, but ordinarily may not be imputed to the other partners."); *but see Durkin v. Shea,* 957 F.Supp. 1360, 1367

(S.D.N.Y.1997) (Under New York law, a partner is an agent of his fellow partners, and "general principles of agency law can appropriately inform the jurisdictional inquiry."). We find no evidence of Freese's involvement in any matters regarding the litigation in Texas against Dillard's. *See generally Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 44–59 (1st Cir.2002) (In a dispute over legal fees, court discusses implied agency and ratification in context of personal jurisdiction under the Massachusetts long-arm statute.) A party's liability alone does not establish the jurisdiction of the forum. The record does not support specific jurisdiction over Freese.

■ Appellants also challenge general jurisdiction. A general jurisdiction inquiry "involves a 'more demanding minimum contacts analysis' . . . with a 'substantially higher' threshold . . . ." *PHC–Minden, L.P.,* 235 S.W.3d at 168 (quoting *CSR, Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex. 1996), and 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (2007)). Ordinarily, the defendant " 'must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction.' " *Id.* (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5). We focus solely on Freese's contacts with Texas up to the time the lawsuit was filed. *See PHC–Minden, L.P.,* 235 S.W.3d at 169.

■ Appellees contend the trial court has general jurisdiction over Freese because he opened an office in Texas and has traveled to Texas to practice law. Freese's firm was created after Ernster's lawsuit was filed on August 23, 2006. The relevant period of contacts for general jurisdictional purposes ends at the time the lawsuit is filed. *Id.*

■ Appellees also contend Freese traveled to Texas to practice law. They cite Sweet's testimony stating Freese made "numerous" trips to Texas concerning resilin cases he was prosecuting with another counsel. Beyond this, we find no evidence of when or how many trips were made, or of the extent of his contacts with Texas. The record is insufficient to establish general jurisdiction over Freese.

CONCLUSION

We affirm the trial court's order denying the special appearance motions of Langston, Sweet, & Freese and Sweet & Freese. Richard Freese's contacts are insufficient to support either general or specific jurisdiction on this record. We reverse the order denying his special appearance, and instruct the trial court to dismiss Richard Freese from the lawsuit for lack of personal jurisdiction.

AFFIRMED IN PART; REVERSED IN PART.