COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-120-CV

 

 

GORDON & DONER, P.A.                                                      APPELLANT

 

                                                   V.

 

JEFFREY JOROS                                                                    APPELLEE

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.      Introduction








Is a Florida law firm that referred a Florida
resident=s case
to a Texas lawyer for filing in New York subject to personal jurisdiction in
Texas?  Because we hold that the Florida
firm did not have sufficient minimum contacts with Texas to support the
exercise of specific jurisdiction over it by a Texas court, we answer the
question Ano.@  We reverse the trial court=s order
denying the Florida law firm=s
special appearance and render judgment dismissing Appellee=s claims
against the Florida law firm for lack of personal jurisdiction.

II.     Background

Appellee Jeffrey Joros (AJoros@), a
Florida resident, sued Appellant Gordon & Doner, P.A. (AGordon@), a
Florida law firm, as well as Bailey & Galyen f/d/b/a Bailey, Galyen &
Gold (ABailey@), a
Texas law firm; Phillip Galyen, P.C., a Texas law firm; and Robert Schwartz, an
attorney and Texas resident, for professional negligence, DTPA violations,
breach of fiduciary duty, and fraud. 
Gordon filed a special appearance with its original answer.

A.     Joros=s
Allegations








Joros=s first
amended original petition alleged that he retained Gordon to represent him in
claims against Eli Lilly arising out of injuries involving the drug
Zyprexa.  Suit was to be filed in
multidistrict litigation pending in the Eastern District of New York.[1]  Thereafter, he alleged, Gordon referred Joros=s case
to Bailey in Texas to file his claims in the litigation pending in New
York.  Allegedly, Gordon entered into a
written contract with Bailey to jointly represent Joros.  According to Joros, Bailey was to act as lead
counsel for Joros, and a substantial portion of the legal services concerning
Joros=s case
was to be performed by Bailey in Texas. 
Gordon would remain jointly responsible for Joros=s case.

Joros pleaded that the A[d]efendants@ told
him that they would soon file suit in his case, that later they told him that
he had been Aincluded in the first round of
settlements in the Zyprexa litigation,@ and
that still later they told him that he was part of a second round of
settlements concerning the Zyprexa litigation. 
However, Joros asserted, he eventually discovered that his claim was
never filed.[2]


B.     Gordon=s
Special Appearance

Gordon filed a special appearance alleging that
Gordon was a business entity formed under Florida law and has never done
business in Texas.  Gordon also alleged
that Gordon:








$                  
is not a resident of Texas and is not required to maintain, nor does
it maintain, a registered agent for service in Texas;

 

$                  
does not engage in, and has never engaged in, any business in Texas;

 

$                  
has not done business in Texas within the meaning of Texas Civil
Practices and Remedies Code section 17.042;

 

$                  
has not committed any torts, in whole or in part, in Texas;

 

$                  
has no employees, servants, or agents in Texas;

 

$                  
has not maintained a place of business in Texas and has never
maintained offices or any other type of facility in Texas;

 

$                  
does not own any real or personal property in Texas;

 

$                  
does not maintain any bank accounts, telephone numbers, or post office
boxes in Texas; and

 

$                  
does not pay any taxes to any local or state taxing authorities within
Texas. 

 








Robert E. Gordon, a partner in the Gordon law
firm, attached an affidavit  stating that
he resides in Florida and is licensed to practice law in Florida, that he is
not licensed to practice law in Texas, that none of the other lawyers in the
Gordon law firm are licensed in Texas, and that he does not own property in
Texas, does not maintain bank accounts in Texas, and has never represented
Texas residents in litigation in Texas. 
Further, he averred that Gordon has never advertised in Texas, has never
represented clients in litigation or transactions in Texas, and that the
attorney-client relationship between Gordon and Joros was initiated and
subsequently conducted in Florida.

In its brief in support of its special
appearance, Gordon argued that it was a Florida law firm, that Joros was a
Florida resident, and that all contacts between Joros and Gordon that give rise
to Joros=s claims
occurred in Florida.  Gordon stated that
its sole connection with the state of Texas pertaining to Joros=s claim
was that it entered into a joint-representation agreement with Bailey on Joros=s behalf
relating to the Zyprexa litigation. 

C.     Joros=s
Response to Gordon=s Special Appearance

In his response to Gordon=s
special appearance, Joros attached copies of the contract for legal services
signed by Joros and Gordon, a Astatement
of client=s rights for contingency fees@ signed
by Joros and Gordon, and Joros=s
written consent for Gordon to associate Bailey in his claims.

D.     Stipulations
of the Parties








Also attached were stipulations between Gordon
and Joros that the contract, the fee agreement, and the consent to associate
were true and correct copies.  The
parties=
stipulations also provided that Bailey had been associated as Alead
counsel@ in
connection with Joros=s claim, that Joros=s claim
was not to be filed in the state of Texas but in the multi-district litigation
pending outside of Texas, that much of the Alegal
work provided by [Bailey] was going to be performed in Texas,@ and
that Gordon had referred several other claims involving the use of Zyprexa to
Bailey.

E.     The
Ruling

After a hearing at which no additional evidence
was presented, the trial court denied Gordon=s
special appearance, from which ruling Gordon has brought this interlocutory
appeal.  See Tex. Civ. Prac. &
Rem. Code Ann. ' 51.014(a)(7) (Vernon 2008)
(allowing interlocutory appeal from denial of special appearance).

III.     Standard of Review








Whether a trial court has personal jurisdiction
over a defendant is a question of law that we review de novo.  Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007); BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002).  In
reviewing a trial court=s ruling on a special
appearance, we examine all of the evidence in the record to determine if the
defendant negated all possible grounds for personal jurisdiction.  Bergenholtz v. Cannata, 200 S.W.3d
287, 292 (Tex. App.CDallas 2006, no pet.).  The trial court must frequently resolve
underlying fact questions before deciding the jurisdictional issue.  BMC Software Belgium, 83 S.W.3d at
794.  If the trial court does not issue
findings of fact, we imply all such findings necessary to support the judgment
that are supported by the evidence.  See
id. at 795.  When a reporter=s record
is included in the appellate record, the trial court=s
findingsCeither
express or impliedCare not conclusive and are
subject to challenge for legal and factual sufficiency.  See id.  However, the facts in this appeal are
undisputed.  Although the trial court
held a hearing on Gordon=s special appearance and
considered the pleadings, evidence, and argument of counsel, there is no
reporter=s
record.  Therefore, we will presume that
the special appearance hearing was nonevidentiary and that the trial court
considered only the evidence filed with the clerk.  See Michiana Easy Livin=
Country, Inc. v. Holten, 168 S.W.3d 777, 782 (Tex. 2005).

IV.    Personal Jurisdiction

A.     Applicable
Law








Texas courts may assert personal jurisdiction
over a nonresident if jurisdiction is authorized by the Texas long‑arm
statute and is consistent with federal and state constitutional due‑process
guarantees.  Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002), cert.
denied, 537 U.S. 1191 (2003); see Tex. Civ. Prac. & Rem. Code
Ann. '' 17.041B.045
(Vernon 2008).  The long‑arm
statute allows Texas courts to Areach as
far as the federal constitutional requirements of due process will allow.@  Am. Type Culture Collection, Inc., 83
S.W.3d at 806 (quoting Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)); see also Tex. Civ.
Prac. & Rem. Code Ann. ' 17.042
(listing acts constituting Adoing
business@ within
state for purposes of long‑arm statute). 
Thus, a Texas court may only exercise personal jurisdiction over a
nonresident if doing so complies with federal due process requirements.  See Moki Mac, 221 S.W.3d at 575. Those
requirements are satisfied if (1) the nonresident defendant has established
minimum contacts with the forum state and (2) the exercise of jurisdiction
comports with Atraditional notions of fair play
and substantial justice.@ 
Int=l Shoe Co. v. Washington, 326
U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 311
U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

1.     Nature
of Contacts with Texas








The contacts relevant to a jurisdictional
analysis are those by which the nonresident defendant Apurposefully
avails itself of the privilege of conducting activities within the forum State,
thus invoking the benefits and protections of its laws.@  Moki Mac, 221 S.W.3d at 575 (quoting Hanson
v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)); Michiana,
168 S.W.3d at 784.  The Atouchstone@ of
jurisdictional due process analysis is Apurposeful
availment.@ 
Michiana, 168 S.W.3d at 784 (citing Hanson, 357 U.S. at
253, 78 S. Ct. at 1240).  It is essential
in each case that there be some act by which the defendant purposefully availed
itself of the privilege of conducting activities within the forum state, thus
invoking the benefits and protections of its laws.  Id.

There are at least three aspects to the Apurposeful
availment@ inquiry: first, only the
defendant=s contacts with the forum are
relevant, not the unilateral activity of another party or third person; second,
the contacts with the forum must be Apurposeful@ rather
than Arandom,
isolated, or fortuitous@; and third, the Adefendant
must seek some benefit, advantage[,] or profit by >availing= itself
of the jurisdiction.@ 
Moki Mac, 221 S.W.3d at 575; Michiana, 168 S.W.3d at
785.  What is important is the quality
and nature of the defendant=s
contacts with the forum state, rather than their number.  Am. Type Culture Collection, Inc., 83
S.W.3d at 806.

2.     Specific
and General Jurisdiction

A nonresident defendant=s
contacts with the forum state meet the federal due process minimum contacts
standard if the contacts establish either general or specific
jurisdiction.  BMC Software Belgium, 83
S.W.3d at 795B96.  Joros relies only upon specific jurisdiction
in this case; he concedes general jurisdiction is lacking.  When specific jurisdiction is alleged, the
focus is on the relationship between Athe
defendant, the forum[,] and the litigation.@  Moki Mac, 227 S.W.3d at 575 (quoting Guardian
Royal, 815 S.W.2d at 226).








The necessary relationship between the defendant,
the forum and the litigation requires that a court exercise Aspecific@
jurisdiction only in a suit Aarising
out of or related to the defendant=s
contacts with the forum.@ 
Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,
414 n.8, 104 S. Ct. 1868, 1872 n.8 (1984); see also CSR Ltd. v. Link,
925 S.W.2d 591, 595 (Tex. 1996).  As to
the Arelatedness@
element, there must be Aa substantial connection between
[the nonresident=s contacts with the forum] and
the operative facts of the litigation.@  Moki Mac, 221 S.W.3d at 585.

B.     Specific
Jurisdiction Analysis








Gordon contends that minimum contacts for
specific jurisdiction in Texas are lacking because, under the undisputed facts,
the claims asserted by Joros do not arise out of or relate to any contacts by
Gordon with Texas but arise solely out of an agreement entered into in Florida
between Gordon and Joros, both Florida residents, for representation in the
Zyprexa claims to be filed in New York. 
Joros responds that Gordon referred the case to Bailey, the Texas law
firm, pursuant to an agreement between Gordon and Bailey in which it was
understood that a substantial portion of the legal services would be performed
in Texas and in which Gordon agreed to be jointly responsible for the legal
services of the Texas law firm; thus, Gordon should have anticipated being
subject to Texas jurisdiction based on its purposeful contact in entering into
that agreement.

Joros first argues that Gordon admitted in the
trial court that it entered into a written contract with Bailey, the Texas law
firm, part of which was to be performed in Texas, albeit by Bailey.  Joros relies upon the language of the Texas
long-arm statute providing that a nonresident does business in Texas if the
nonresident Acontracts by mail or otherwise
with a Texas resident and either party is to perform the contract in whole or
in part in this state.@ 
Tex. Civ. Prac. & Rem. Code '
17.042.  Joros reasons that, because
there is no dispute that Gordon entered into a contract with Bailey and because
the statute provides that a nonresident is doing business if Aeither
party@ is to perform the contract in
whole or in part in Texas, Gordon was engaged in doing business in Texas within
the meaning of the statute.








Gordon counters that there is no contract between
Gordon and Bailey in evidence. This line of argument by Gordon is
puzzling.  As Joros points out, Gordon
admitted in its brief in the trial court that a Ajoint-representation
agreement@ did exist between it and
Bailey, and the parties even stipulated to its relevant terms.  Indeed, the arguments of both parties center
almost entirely on that agreement.[3]

We agree with Joros that the agreement between
Gordon and Bailey satisfies the requirement of the Texas long-arm statute that
Gordon was Adoing business@ in
Texas by entering into a contract with Bailey, a Texas resident, to be
performed in part by Bailey in Texas. 
Tex. Civ. Prac. & Rem. Code Ann. ' 17.42
(providing that nonresident is doing business here if Aeither
party@ is to
perform the contract in whole or in part in Texas).   But the Texas long-arm statute reaches only Aas far as
the federal constitutional requirements of due process will allow.@  Moki Mac, 227 S.W.3d at 575 (quoting Guardian
Royal, 815 S.W.2d at 226).  The
exercise of jurisdiction by a Texas court over Gordon must still meet the
minimum contacts requirement of federal due process.  Id. (holding negligence and
misrepresentation claims based on sending brochures and release forms to Texas
residents that satisfied doing-business requirement of statute were
nevertheless insufficient to establish for jurisdiction absent minimum
contacts).








Merely contracting with a Texas resident is
insufficient to establish the minimum contacts necessary to support the
exercise of specific personal jurisdiction over the nonresident defendant.  See, e.g., Olympia Capital Assocs., L.P.
v. Jackson, 247 S.W.3d 399, 418 (Tex. App.CDallas
2008, no pet.) (holding mere existence of a contract between a nonresident and
a resident of TexasCincluding communications related
to the execution and performance of that contractCinsufficient
to support specific jurisdiction); Weldon-Franke v. Fisher, 237 S.W.3d
789, 796 (Tex. App.CHouston [14th Dist.] 2007, no
pet.) (holding contracting with and accepting payment from Texas residents
insufficient to support minimum contacts); Trigeant Holdings, Ltd. v. Jones,
183 S.W.3d 717, 725 (Tex. App.CHouston
[1st Dist.] 2005, pet. denied); see also Burger King Corp. v. Rudzewicz,
471 U.S. 462, 478B79, 105 S. Ct. 2174, 2185B86
(1985) (holding that merely contracting with resident of forum state is
insufficient to subject nonresident to the forum=s
jurisdiction).








Joros urges that the terms of the agreement
providing for the majority of the legal services to be performed in Texas by
Bailey the resident of Texas, should be considered in the jurisdictional
analysis.  To the contrary, what Bailey
agreed to do in Texas is not relevant. 
The first requirement of Apurposeful
availment@ is that only the defendant=s
contacts with the forum are relevant, not the unilateral activity of another
party or third person.  Michiana, 168
S.W.3d at 785 (A[I]t is only the defendant=s
contacts with forum that count.@);
Turner Shilling v. Gaunce Mgt., 247 S.W.3d 447, 456 (Tex. App.CDallas
2008, no pet.) (holding that performance of contract by plaintiff would Aessentially
be accomplished in Texas@ not relevant to jurisdictional
analysis); Bergenholtz, 200 S.W.3d at 295 (stating actions by plaintiffs
of receiving legal advice, billings, and correspondence in Texas not relevant
to jurisdiction over nonresident lawyer); see also Moncrief Oil Int=l, Inc.
v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007) (concluding
that merely contracting with resident of forum state, even coupled with performance
by resident party of forum state, did not establish minimum contacts where
defendant did not perform any of its own obligations there, contract did not
require performance there, and purpose or hub of contract was centered in
Russia).  Bailey=s
performing the legal services in Texas is not a purposeful contact of
Gordon.  Nor do we see how the provision
for Bailey=s performance of services in
Texas makes it reasonably foreseeable to Gordon that he was subject to being
haled into a Texas court, as Joros argues. 
See Michiana, 168 S.W.3d at 785 (noting minimum contacts analysis
focuses solely on actions and reasonable expectations of defendant).








Neither do we believe that the second element
required for Apurposeful availment@ is met,
that is, that the contact of the defendant must not be simply random, isolated,
or fortuitious.  See Moki Mac, 221
S.W.3d at 575; Moncrief Oil, 481 F.3d at 313 (holding that Amere
fortuity@ that
one party happened to be Texas resident, coupled with that party=s
unilateral performance in Texas, not sufficient to confer jurisdiction where
agreements were executed in Russia with a Russian corporation concerning a
Russian joint venture to develop a Russian oil field); see also Myers v.
Emery, 697 S.W.2d 26, 32 (Tex. App.CDallas
1985, no writ) (holding receipt of mail and long-distance calls in Texas from
defendant as well as representation of other clients in Texas Aminimal
and fortuitious@).  A letter from Bailey to Joros in the record
indicates that the case was referred to Bailey by Gordon solely because of
Bailey=s
experience in pharmaceutical litigation.








The parties do not address the third requirement
of Apurposeful
availment,@ that is, that the defendant
must seek some Abenefit, advantage[,] or profit
by >availing= itself
of the jurisdiction.@ 
Moki Mac, 221 S.W.3d at 575. 
It appears that Gordon associated Bailey to handle the filing of the
suit in New York because of his experience rather than because of his practice
or location in Texas.  Joros points to
his pleadings alleging that Gordon entered into a joint venture with Bailey by
virtue of his agreement with Bailey because he specifically agreed to retain
joint responsibility for the legal services to be rendered by Bailey in
Texas.  Joros argues that this agreement
subjects Gordon to joint liability for Bailey=s legal
services to be rendered on Joros=s behalf
in Texas and, therefore, constitutes sufficient purposeful availment by Gordon
of the privilege of doing business in Texas to subject Gordon to jurisdiction
here.  This argument conflates personal
jurisdiction with liability on the merits of Joros=s claim.








Whether Gordon entered into a joint venture with
Bailey or otherwise retained joint responsibility for Bailey=s
conduct in Texas is relevant only to Gordon=s
liability on the merits.  It does not
constitute purposeful availment by any activities by Gordon in Texas so as to
establish minimum contacts.  See, e.g.,  PHC-Minden, L.P. v. Kimberly-Clark Corp.
235 S.W.3d 163, 174 (Tex. 2007) (noting personal jurisdiction involves due
process considerations that may not be overridden by statutes or the common law
and distinguishing factors relevant to piercing the corporate veil for
liability purposes from those relevant to minimum contacts, citing In re
Baan Co. Sec. Litig., 245 F. Supp. 2d 117, 129 (D.D.C. 2003) (stating
liability under the Securities Act Acannot
on its own support personal jurisdiction@ as such
an approach Aimpermissibly conflates
statutory liability with the Constitution=s
command that the exercise of personal jurisdiction must be fundamentally fair@)); Langston,
Sweet & Freese, P.A. v. Ernster, 255 S.W.3d 402, 411 (Tex. App.CBeaumont
2008, pet. denied) (AA party=s
liability alone does not establish jurisdiction of the forum.@); see
also AT & T Co. v. Compagnie Bruxelles Lambert, 94 F.3d
586, 591 (9th Cir. 1996) (stating Aliability
is not to be conflated with amenability to suit in a particular forum@ because
personal jurisdiction has constitutional dimensions).

Joros argues that Gordon should have foreseen
that, by entering into the agreement for joint representation with Bailey, he
might be held liable for Bailey=s
performance or failure to perform legal services in Texas.  But imputing Bailey=s
conduct to Gordon still results only in liability based on a legal theory
rather than actual contacts with Texas by Gordon.  Imputed contacts do not suffice to establish
minimum contacts by the Gordon firm, itself, with Texas when the agreement for
co-representation between Gordon and Bailey did not focus on litigation in
Texas.  See Langston, 255 S.W.3d
at 411 (holding partnership=s
contacts with state not imputed to individual nonresident partner to establish
personal jurisdiction absent evidence partner participated in litigation in
Texas or had other individual contacts); see also Moni Pulo Ltd. v. Trutec
Oil & Gas, Inc., 130 S.W.3d 170, 175 (Tex. App.CHouston
[14th Dist.] 2004, pet. denied) (op. on reh=g)
(holding acts of one joint venturer in business that did not focus on Texas Adid not
create jurisdiction, as opposed to liability, of otherCthat is,
there are no imputed minimum contacts@).








Jurisdiction based on a joint venture agreement
between lawyers was rejected in Eakin v. Acosta, in which Acosta, a
Florida lawyer, represented Eakin, a Texas resident, in a lawsuit filed in
Florida.  21 S.W.3d 405, 407 (Tex. App.CSan
Antonio 2000, no pet.), abrogated in part on other grounds by BMC Software
Belgium, 83 S.W.3d at 194 n.1.  An
addendum to the contract of representation between Acosta and Eakin provided
that a Texas law firm would act as consulting counsel.  Id. 
The addendum further provided that the Texas firm was to Awork
subservient to the decision making control of lead attorney Howard Acosta,@ with
all legal decisions and strategies to be made by Acosta.  Id. 
After the Florida lawsuit was settled, a dispute developed over fees,
and Eakin sued Acosta in Texas, claiming Acosta had availed himself of Texas
jurisdiction by participating in long-distance telephone calls between Florida
and Texas, forwarding the agreement of representation to Eakin in Texas, and
entering into the joint venture with the Texas law firm.  Id. 
The court of appeals upheld dismissal of Acosta for lack of personal
jurisdiction based on Acosta=s uncontroverted
affidavit that all legal work was performed by him in Florida and because,
despite the fee agreement, there was no evidence that Acosta exercised any
control over the Texas lawyer or made any legal decisions or formed any
strategies that affected that lawyer=s
work.  Id. at 410.








Joros attempts to distinguish Eakin because
the uncontroverted affidavit of the Florida lawyer in that case stated that he
had performed all of his work in Florida while the agreement here with the
Texas firm provides that much of the legal work was to be performed in
Texas.  But he overlooks Gordon=s
similar affidavit here, which was likewise uncontroverted, that Gordon
performed all of its legal services on behalf of Joros in Florida.  His argument also omits the additional
undisputed language in the agreement that the legal work to be performed in
Texas would be performed by Bailey, not by Gordon.

The facts in this case are even more favorable to
the nonresident lawyer than those in Eakin because, by performing legal
services on behalf of Joros in Texas, Bailey was not acting under the control
or direction of Gordon under the agreement. 
While the nonresident lawyer in Eakin was to remain lead counsel,
the agreement in this case instead specified that Bailey was to act as
lead counsel, and there is also no evidence that Gordon exercised any actual
control or supervision over Bailey=s
performance.  Consequently, there is no
basis in the record for imputing Bailey=s
conduct to Gordon as a purposeful contact with Texas.








Joros cites the stipulation between the parties
that Gordon referred other similar cases to Bailey in Texas for filing and
argues that this constitutes other contacts by Gordon with Texas related to the
suit.[4]  While the other suits may be related because
they involved Zyprexa, there is no evidence or stipulation indicating that
those other suits have any connection to the Aoperative
facts@ of this
litigation.  See Moki Mac, 221
S.W.3d at 585.

Finally, Joros asserts that Gordon agreed to
retain responsibility for Joros=s case Ain
accordance with the Texas Rules of Professional Conduct,@  such that Gordon was bound by Texas ethical
rules to maintain oversight of the legal services rendered by Bailey and must
have anticipated that he would be subjected to Texas law.  However, the 
reference to the Texas ethical rules is contained in a letter addressed
to Joros from Bailey, not Gordon, and refers to the requirement that Joros be
advised of the division of fees, which was Bailey=s duty
as a licensed Texas lawyer, not that of Gordon.








There is no evidence that Gordon made any trips
to Texas in connection with Joros=s
representation, and no evidence of long-distance calls or correspondence by
Gordon to Bailey in connection with the agreement or the suit to be filed in
New York by Bailey on Joros=s
behalf.  The agreement between Gordon and
Bailey for Bailey to file suit on behalf of Joros stands alone as Gordon=s sole
contact with Texas.  We decline to hold
that this single forum contact constitutes a purposeful availment satisfying
the minimum contacts requirement to subject Gordon to the jurisdiction of a
Texas court.  Therefore, we need not
reach the next question of whether that contact constitutes a Asubstantial
connection@ with the operative facts of the
lawsuit against Gordon so as to satisfy the requirement that the contact must
arise out of and relate to the lawsuit in order to satisfy due process.  Even if we did, we would answer Ano.@  Joros=s claim
against Gordon does not arise from or relate to the agreement between Gordon
and Bailey but from Joros=s own attorney-client
relationship with Gordon.  Nor do we need
to reach the second prong of the due process inquiry, that is, whether the
exercise of jurisdiction comports traditional notions of fair play and substantial
justice.  We sustain Gordon=s sole
issue.

V.     Conclusion








Because we conclude the trial court lacked
personal jurisdiction, we sustain Gordon=s sole
issue and hold that the court erred by denying Gordon=s
special appearance.  Accordingly, we
reverse the order of the trial court and render judgment dismissing Joros=s claims
against Gordon for want of jurisdiction.

 

 

ANNE
GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED:  April 30, 2009











[1]The United States
Judicial Panel on Multidistrict Litigation established an MDL proceeding for
Zyprexa litigation in 2004 and ordered Zyprexa-related claims transferred to
the United States District Court for the Eastern District of New York for
pretrial proceedings.  See In re
Zyprexa Prods. Liab. Litig., 314 F. Supp. 2d 1380, 1382 (J.P.M.L. 2004).





[2]Further, Joros alleged on
information and belief that the defendants solicited other Zyprexa cases with
the intent to refer these cases to other firms and that the defendants never
intended to fully litigate any of these cases but intended to file them and
negotiate an aggregate settlement.  Joros
alleged that a conflict of interest emerged due to the numerous Zyprexa clients
the defendants had secured and that the defendants failed to disclose the
conflict to Joros.

 





[3]See Holy Cross Church of
God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (holding statements in summary
judgment response and counter-motion to be judicial admissions); see also
City Nat=l Bank v. United States, 907 F.2d 536, 544 (5th
Cir. 1990) (noting admissions of fact in a summary judgment brief could be used
to determine whether there is a genuine issue of material fact).





[4]Joros also contends that
he alleged that the ADefendants@ misrepresented that he
was in the first and second rounds of settlements in the Zyprexa litigation,
when he was not included in either round. 
He argues that his claims are thus tied directly to Bailey=s representation of Joros
and the contract between Gordon and Bailey. 
But any misrepresentations were made in Texas by Bailey or in Florida by
Gordon and were made to Joros in Florida. 
Joros does not explain how these additional allegations strengthen his
claim that Gordon engaged in purposeful contacts in Texas.