**Opinion issued May 4, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-21-00508-CV

———————————

**SARJAK CONTAINER LINES SINGAPORE PTE LTD., Appellant**

**V.**

**BARBARA SEMONS, Appellee**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1155769**

---

## MEMORANDUM OPINION

Appellant Sarjak Container Lines Singapore PTE Ltd. ("Sarjak"), a Singaporean company, appeals the trial court's denial of its special appearance. Appellee Barbara Semons sued Sarjak asserting various employment-related claims.

After the county court entered a final no-answer default judgment against Sarjak, Sarjak filed a special appearance challenging personal jurisdiction, which the trial court denied by written order. In a single issue on appeal, Sarjak challenges the denial of its special appearance. Semons argues that this Court lacks jurisdiction because the case has become moot. We conclude that the appeal is not moot, and we have jurisdiction to reach the merits of Sarjak's appeal. We affirm.

**Background**

In her petition, Semons alleged that Sarjak hired her in October 2016 as an executive director to work in Houston overseeing Sarjak's American shipping operations. At the time she was hired, Semons was Sarjak's only employee stationed in the United States. Two other employees, Soumen Majumdar and Ines Bigdeli, lived overseas. In January 2017, Majumdar tasked Semons with forming a new company in Texas, which would become Sebert Shipping, Inc., a wholly owned subsidiary of Sarjak. Majumdar is Sebert Shipping's sole officer.

After Semons formed Sebert Shipping, Majumdar obtained a visa and moved to Texas to run Sebert Shipping's operations. When he arrived in Texas, Semons alleged that he began treating her differently than he had before he moved to Texas because she was a female. For example, Semons alleged that Majumdar required her to report to a male colleague in a position inferior to her own. She had to give up her office to this male colleague and move into a "bull pen" setting that was much

2

smaller than her office. She also learned that the male colleague earned nearly twice her salary despite holding an inferior position in the company. She also alleged that this male colleague and Majumdar treated her "very cruelly," including by cursing at her.

In April 2018, Sarjak sent Semons a list of customers owing more than $500,000 in tariffs that had not been collected by Sarjak's previous agent. Semons contacted all of the customers who owed tariffs, but the customers became upset upon learning for the first time that they owed the tariffs. One customer's attorney sent a letter to Sarjak demanding a copy of tariff paperwork that Sarjak was required to file with the Federal Maritime Commission before it could collect the tariffs from the customers. Semons contacted another Sarjak employee to request the necessary tariff paperwork, but that employee did not know any paperwork needed to be filed so none had been filed. The Sarjak employee then contacted Sarjak's tariff company and its legal counsel. Sarjak then advised Semons that the paperwork had to be filed or the tariffs could not be collected from the customers. Semons reported this information to Majumdar, but he demanded that she collect the tariffs from the customers anyway. Semons refused, which "enraged" Majumdar. He began "constantly" yelling at, belittling, and embarrassing Semons in front of the entire office. Semons was eventually terminated, and Sarjak told her she was terminated for refusing to collect the tariffs.

3

Semons filed a charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission. She then sued Sarjak, Sebert Shipping, and Majumdar for gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act, wrongful discharge, and tortious interference with her employment contract.[1] Semons sought actual damages, exemplary damages, attorney fees and costs, and interest.

On June 4, 2021, the county court signed a final no-answer default judgment against Sarjak.[2] The judgment recited that Semons's claims against Sarjak were meritorious, specifically reciting that Sarjak violated the Labor Code and caused harm to Semons. The judgment stated that Sarjak intentionally and willfully violated Semons's rights under the Labor Code, which entitled Semons to exemplary damages. The judgment did not, however, award her any exemplary damages. The judgment awarded her actual damages, attorney's fees, and costs. The judgment also awarded her conditional appellate fees if Sarjak unsuccessfully appeals to this Court or the Texas Supreme Court.

On July 2, 2021, Sarjak filed several pleadings in the county court proceeding: a special appearance; a motion to vacate the default judgment and for new trial

---

[1] Sebert Shipping and Majumdar are not parties to this appeal.

[2] Before signing the final default judgment, the county court signed an interlocutory judgment against Sebert Shipping, and Semons nonsuited her claims against Majumdar.

subject to its special appearance; and an answer with affirmative defenses subject to its special appearance.

In its special appearance, Sarjak argued that the county court lacked personal jurisdiction over it because it was not a resident of Texas, it lacked minimum contacts generally with Texas, and it lacked minimum contacts specifically related to Semons because it did not employ, contract with, or have prior interactions with Semons. The only evidence attached to Sarjak's special appearance was a declaration by Supal Shah, a resident of India, verifying that the facts stated in the special appearance were within his personal knowledge and were true and correct.

However, Sarjak's special appearance also referenced a declaration from Shah that was attached to Sarjak's contemporaneously filed motion to vacate and for new trial. In this declaration, Shah averred that he is the president of finance and strategy for Sarjak Container Lines PVT. LTD ("Sarjak India"), which Sarjak contends is a separate entity despite the similarity in the two entities' names. Nevertheless, Shah averred that he has personal knowledge of Sarjak's business and legal affairs.

He stated that Sarjak is a company incorporated in Singapore and has its principal place of business in Singapore. He also stated that Sarjak does not conduct business in Texas; have offices, facilities, or employees in Texas; or have a registered agent for service of process in Texas. He also stated that Sarjak did not employ or otherwise contract with Semons. Finally, Shah denied that he or any

5

member of Sarjak's management knew about Semons's lawsuit until Sarjak received the notice of default judgment entered against it.

Semons filed a response to Sarjak's special appearance. She disputed that she was not employed by Sarjak, arguing that Sarjak hired her directly and is the sole parent company of Sebert Shipping. She attached the letter offering her employment to prove that Sarjak hired her. She also attached two franchise tax reports filed with the Texas Comptroller of Public Accounts, both of which list Sarjak as Sebert Shipping's sole parent company and Majumdar as Sebert Shipping's sole officer.

At a hearing on its special appearance, Sarjak disputed that the letter of employment proved that it hired Semons. Sarjak argued that the letter refers to Sarjak India, not Sarjak, and the two entities are separate despite the substantial similarity in their names. Sarjak argued that Shah's declaration denying that Sarjak ever employed or contracted with Semons supports this argument. Semons objected to Shah's declaration, as she had in her special appearance response, on the grounds that the declaration included hearsay and incorrect statements. She also disputed that the letter offering her employment showed that she was hired by Sarjak India rather than Sarjak. Semons attended the hearing, and her counsel offered several times to call her as a witness to prove that she was employed by Sarjak, but the court stated that it did not need her testimony.

Sarjak also argued that the Texas franchise tax reports showed only "an ostensible ownership structure or ownership interest for a separate entity and does not establish any of the requirements for minimum contacts." When the county court pressed Sarjak, however, its counsel conceded that Sarjak "is a fully owned subsidiary of this Sarjak India," the separate entity. Semons argued that Sarjak is the sole owner of Sebert Shipping, and that Semons formed Sebert Shipping while employed by Sarjak. Sarjak contended that mere ownership of a Texas subsidiary does not confer personal jurisdiction over the nonresident parent company. At the end of the hearing, the court denied the special appearance.

On September 2, 2021, the county court entered a written order denying Sarjak's special appearance. On September 21, 2021, Sarjak filed a notice of accelerated appeal of the order denying its special appearance.

## Jurisdiction

We first address a jurisdictional issue raised by Semons. In her appellate brief, Semons argues that this appeal is moot because the notice of appeal was filed after the county court lost plenary power over the proceedings. According to Semons's argument, because the county court lacked plenary power when Sarjak filed its notice of appeal, this Court cannot redress Semons's injuries and we therefore lack jurisdiction over the appeal. Sarjak disputes that the county court had lost plenary power either when the court denied the special appearance or when Sarjak filed the

7

notice of appeal. For the reasons discussed below, we conclude that the appeal is not moot because the county court had plenary power when it denied the special appearance, and Sarjak timely filed the notice of appeal under the Rules of Appellate Procedure thereby invoking this Court's appellate jurisdiction.

Whether we have appellate jurisdiction is a question of law that we review de novo. *Caress v. Fortier*, 576 S.W.3d 778, 781 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007)). "Unless specifically authorized by statute, Texas appellate courts only have jurisdiction to review final judgments." *Bison Bldg. Materials, Ltd. v. Aldridge*, 422 S.W.3d 582, 585 (Tex. 2012) (citations omitted); *see Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 & n.12 (Tex. 2001). An interlocutory order denying a special appearance is expressly appealable under section 51.014(a)(7) of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (authorizing appeal from county court order that "grants or denies the special appearance of a defendant").

To invoke the jurisdiction of an appellate court, a party must file a timely notice of appeal. TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."). Generally, in an appeal from a final judgment, a notice of appeal must be filed within thirty days after the court signs the judgment.

8

TEX. R. APP. P. 26.1. If, as here, a party files a timely motion for new trial or a motion to modify the judgment, then the notice of appeal must be filed within ninety days after the judgment is signed. TEX. R. APP. P. 26.1(a); *see* TEX. R. CIV. P. 329b(a), (g) (stating that motion for new trial and motion to modify, correct, or reform judgment must be filed within thirty days after judgment or order is signed).

The deadline to file a notice of appeal may be further extended if, within fifteen days after the deadline, the party seeking to appeal files a notice of appeal and a motion for extension of time to file a notice of appeal. TEX. R. APP. P. 26.3. We will necessarily imply a motion for extension of time when an appellant acting in good faith files a notice of appeal beyond the deadline but within the fifteen-day period in which the appellant would be entitled to seek an extension of time to file a notice of appeal. *Brown Mech. Servs., Inc. v. Mountbatten Sur. Co.*, 377 S.W.3d 40, 42 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *see also Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997).

The county court signed the final default judgment on June 4, 2021. Sarjak filed a motion to vacate the default judgment and for new trial on July 2, which was timely because it was filed within thirty days after the judgment was signed. *See* TEX. R. CIV. P. 329b(a), (g). The filing of this motion extended Sarjak's deadline to file a notice of appeal of the default judgment to ninety days after the judgment was signed, or until September 2, 2021. *See* TEX. R. APP. P. 26.1(a). Because September

9

2 was Sarjak's deadline to file a notice of appeal, Sarjak had an additional fifteen days to file a timely notice of appeal of the default judgment accompanied by a motion to extend time. *See* TEX. R. APP. P. 26.3; *Brown Mech. Servs.*, 377 S.W.3d at 42. Thus, Sarjak's ultimate deadline to file a notice of appeal of the final default judgment was September 17, 2021, which is ninety plus fifteen days after the judgment was signed on June 4. *See* TEX. R. APP. P. 26.1(a), 26.3. Sarjak filed its notice of appeal on September 21, 2021—four days after this final deadline. Thus, Sarjak did not timely file a notice of appeal of the final default judgment.

However, Sarjak does not challenge the default judgment on appeal. Rather, it challenges the order denying its special appearance, which was signed after the final default judgment. Most post-judgment orders are not appealable because no statute generally authorizes an appeal from post-judgment orders. *Sunnyland Dev., Inc. v. Shawn Ibrahim, Inc.*, 597 S.W.3d 1, 2 (Tex. App.—Houston [1st Dist.] 2020, no pet.). However, section 51.014 does authorize an appeal from an order denying a special appearance. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). Such an appeal is accelerated, and the notice of appeal must be filed within twenty days after the order is signed regardless of whether the party filed a motion for new trial or other post-judgment motion. TEX. R. APP. P. 28.1(a), (b), 26.1(b).

The county court signed the order denying Sarjak's special appearance on September 2, 2021. Section 51.014 authorized Sarjak to appeal this order, and Sarjak

10

had twenty days to file a notice of appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7); TEX. R. APP. P. 26.1(b). Sarjak filed the notice of appeal on September 21, 2021, which is within twenty days after the order was signed. Therefore, Sarjak timely filed its notice of appeal of the order denying its special appearance and invoked this Court's jurisdiction. *See* TEX. R. APP. P. 25.1(b).

The county court's plenary power is only relevant to this inquiry insofar as the court must have plenary power to act, including by ruling on a special appearance. *See Metro. Transit Auth. v. Jackson*, 212 S.W.3d 797, 801 (Tex. App.— Houston [1st Dist.] 2006, pet. denied) (stating that plenary power or jurisdiction is power to adjudicate, that is to grant or deny relief, and lack of jurisdiction is lack of power to make any ruling); *Martin v. Tex. Dep't of Fam. & Protective Servs.*, 176 S.W.3d 390, 393 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("Judicial action taken after the trial court's plenary power has expired is void."). Lack of plenary power deprives a trial court of the power to act, but it does not deprive this Court of our appellate jurisdiction to review the challenged action assuming the appeal has been timely perfected. *See Martin*, 176 S.W.3d at 394 (stating that party may appeal judgment entered after trial court lost plenary power, and appellate court should declare such judgment void, vacate judgment, and dismiss appeal). The parties do not dispute that the county court had plenary power on September 2 when it ruled on the special appearance. Sarjak was required to perfect its appeal according to the

11

requirements in the Rules of Appellate Procedure, as discussed above. Whether the county court had plenary power when Sarjak filed the notice of appeal is irrelevant because the court was not acting when Sarjak filed the notice of appeal.

We disagree with Semons that this case has become moot. "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 162 (Tex. 2012) (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). That is, "a case is moot when the court's action on the merits cannot affect the parties' rights or interests." *Id.* Courts cannot decide a case that has become moot, and courts must vacate any order or judgment previously issued and dismiss the case for lack of jurisdiction. *Id.*

Both parties have a legally cognizable interest in the outcome of this appeal. If Sarjak is successful on appeal and we determine that the county court lacked personal jurisdiction over Sarjak, we must vacate the final default judgment and dismiss the case for lack of jurisdiction. *See id.*; *see also Koch Graphics, Inc. v. Avantech, Inc.*, 803 S.W.2d 432, 433 (Tex. App.—Dallas 1991, no pet.) ("[I]t has been held that, within the period when the trial court has plenary power over its judgment, the court may address a special appearance."). In doing so, Sarjak would be relieved of liability for the default judgment entered against it. Conversely, if we

affirm the denial of Sarjak's special appearance, Semons would maintain her right to the monetary award reflected in the default judgment. Thus, a justiciable controversy exists between the parties: whether Texas courts have personal jurisdiction over Sarjak such that the final default judgment is valid and enforceable. We therefore conclude that this case is not moot.

**Waiver for Inadequate Briefing**

We next address Semons's argument that Sarjak waived its issues on appeal because its appellate brief does not cite to the record on appeal but instead cites only to documents attached in the appendix of its brief. Sarjak responds that the documents included in the appendix to its appellate brief are contained in the record on appeal, and it cited to the documents both in the appendix and in the appellate record.

Our review is confined to the formal record on appeal, which "consists of the clerk's record and, if necessary to the appeal, the reporter's record." TEX. R. APP. P. 34.1; *see Tex. Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.— Houston [1st Dist.] 2016, no pet.) ("Evidence that is not contained in the appellate record is not properly before this Court."). "Documents attached as exhibits or appendices to briefs do not constitute formal inclusion of such documents in the record on appeal, and we cannot consider matters outside the record in our review."

*Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 305 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The Rules of Appellate Procedure allow parties to append documents in the record on appeal to their appellate briefs. *See* TEX. R. APP. P. 38.1(k). Indeed, an appellant is required to include certain documents in an appendix, such as the order or judgment being appealed; the jury charge and verdict, if any; findings of fact and conclusions of law, if any; and the text of legal authority and documents that are "central to the argument." TEX. R. APP. P. 38.1(k)(1). The appellant's appendix may also include "any other item pertinent to the issues or points presented for review," including relevant legal authority and documents not otherwise required to be contained in an appendix. TEX. R. APP. P. 38.1(k)(2).

Our review of the appendix to Sarjak's brief reveals that it includes three documents: (1) Semons's original petition; (2) Sarjak's letter offering employment to Semons; and (3) one of two franchise tax reports relied upon by Semons in her special appearance response. Each of these documents is labelled with the page number on which it appears in the clerk's record. Thus, the documents appended to Sarjak's brief are formally included in the record on appeal. And as Sarjak notes, each citation in its brief to a document in the appendix includes a parallel citation to the document in the appellate record. *See* TEX. R. APP. P. 38.1(g) (requiring statement of facts to be supported by record references), (i) (requiring argument to

14

be supported by citations to record). We conclude that Sarjak has not waived its appeal for inadequate briefing.

## Waiver of Special Appearance

We next address Semons's argument that Sarjak waived its special appearance and entered a general appearance because it filed its motion to vacate and for new trial before it filed its special appearance. Sarjak responds that it filed its special appearance before filing its motion to vacate and for new trial, and it points to the timestamps on each document showing the date and time the respective documents were filed in the county court.

Rule of Civil Procedure 120a governs special appearances. This rule authorizes any party to object to a Texas court's personal jurisdiction over the party by filing a special appearance. TEX. R. CIV. P. 120a(1). A special appearance must be made by sworn motion filed prior to any other pleading or motion, which is known as the "due-order-of-pleading" requirement.[3] *Id*; *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 305 (Tex. 2004)). "Every appearance, prior to judgment, not in compliance with [Rule 120a] is a general

---

[3] Rule 120a also contains a due-order-of-hearing requirement, which states that a special appearance "shall be heard and determined before a motion to transfer venue or any other plea or pleading may be heard." TEX. R. CIV. P. 120a(2). Neither party disputes that Sarjak's special appearance was heard before any other plea or pleading that it filed in the county court.

appearance." TEX. R. CIV. P. 120a(1); *see Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 224 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (stating that failure to strictly comply with Rule 120a, including its due-order-of-pleading requirement, constitutes general appearance and waives challenge to personal jurisdiction).

Sarjak did not appear in the county court before the court entered the default judgment against it. After the default judgment was signed, Sarjak filed three pleadings: (1) a special appearance, (2) a motion to vacate the default judgment and for new trial, and (3) an answer and affirmative defenses. In the clerk's record, Sarjak's motion to vacate and for default judgment appears first in sequential order, followed by Sarjak's special appearance and then its answer. All three documents were filed on July 2, 2021. According to the file stamps on each document, Sarjak filed its special appearance at 4:01 p.m. It filed its motion to vacate and for new trial at 4:09 p.m. And it filed its answer at 4:20 p.m. Thus, the special appearance was filed before any other pleading or motion, and therefore Sarjak complied with the due-order-of-pleading requirement in Rule 120a. We conclude that Sarjak did not waive its special appearance.

## Special Appearance

Finally, we reach Sarjak's sole issue on appeal: whether it purposefully availed itself of the privilege of conducting activities in Texas, thus invoking the

benefits and protections of Texas's laws and subjecting it to personal jurisdiction in Texas courts. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018).

## A.    Standard of Review

Whether a court may exercise personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Id.* at 558. In resolving this question of law, however, courts frequently must resolve questions of fact. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, the county court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by the evidence are implied. *Old Republic*, 549 S.W.3d at 558.

In a special appearance, the court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We will not disturb a county court's resolution of conflicting evidence that turns on the credibility or weight of the evidence. *Id.* We will affirm the county court's ruling on any legal theory that is supported by record evidence. *Id.*

The parties bear shifting evidentiary burdens of proof in a special appearance. *Old Republic*, 549 S.W.3d at 559. The plaintiff bears the initial burden to plead allegations sufficient to confer jurisdiction under the long-arm statute. *Id.* We

17

consider allegations both in the plaintiff's petition and in the plaintiff's response to the special appearance. *Predator Downhole*, 504 S.W.3d at 402. If the plaintiff meets this initial burden, the burden shifts to the nonresident defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Old Republic*, 549 S.W.3d at 559. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).

The defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. Jurisdiction can be negated on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction." *Old Republic*, 549 S.W.3d at 559 (quoting *Kelly*, 301 S.W.3d at 659). Jurisdiction can be negated on a factual basis by presenting evidence that the defendant's "contacts with Texas fall short of purposeful availment." *Id.* (quoting *Kelly*, 301 S.W.3d at 659).

If the nonresident defendant produces evidence negating personal jurisdiction, the burden shifts back to the plaintiff to show that the court has personal jurisdiction over the defendant. *Predator Downhole*, 504 S.W.3d at 402.

## B.     Governing Law

Texas courts may assert personal jurisdiction over a nonresident defendant when (1) the long-arm statute authorizes the exercise of jurisdiction; and (2) the

18

exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Old Republic*, 549 S.W.3d at 558. The long-arm statute is satisfied by a defendant doing business in Texas, including by contracting with a Texas resident where either party is to perform the contract in Texas; by committing a tort in Texas; or by recruiting Texas residents directly or through an intermediary located in Texas for employment inside or outside of Texas. TEX. CIV. PRAC. & REM. CODE § 17.042. Because the long-arm statute extends personal jurisdiction "as far as the federal constitutional requirements of due process will allow," the statute is satisfied if the exercise of personal jurisdiction comports with federal due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

Before a court may exercise personal jurisdiction over a nonresident defendant, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Old Republic*, 549 S.W.3d at 559 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). A nonresident defendant "establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Id.*

19

(quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)).

Courts consider three factors when determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. . . . Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013)). A defendant's activities "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* (quoting *Retamco Operating*, 278 S.W.3d at 338).

A defendant's contacts with a forum state may give rise to either general or specific personal jurisdiction. *Id.* General jurisdiction, which is not at issue here, requires that the nonresident defendant's "affiliations with the state are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 565 (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016)).

Specific jurisdiction, which is in dispute here, arises when the plaintiff's causes of action against the nonresident defendant arise from or relate to the defendant's purposeful in-state activities. *Moki Mac*, 221 S.W.3d at 576. A specific jurisdiction analysis focuses on the relationship between the forum, the defendant,

and the litigation. *Old Republic*, 549 S.W.3d at 559. The contacts must be both purposeful and substantially connected to the operative facts of the litigation. *Id.* at 559–60; *Moki Mac*, 221 S.W.3d at 585. The operative facts of the litigation are those facts that "will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Moki Mac*, 221 S.W.3d at 585; *Fuji Elec. Co. v. Perez*, 615 S.W.3d 508, 520 (Tex. App.—Houston [1st Dist.] 2020, no pet.). "Specific jurisdiction must be established on a claim-by-claim basis unless all the asserted claims arise from the same forum contacts." *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017); *Moncrief Oil*, 414 S.W.3d at 150–51.

## C. Jurisdictional Allegations and Evidence

In her petition, Semons named Sarjak as a defendant and alleged its status as a foreign entity with a registered agent in Texas. She alleged that Majumdar, an employee of Sarjak, hired her as an executive director for Sarjak to oversee its operations in the United States. She alleged that she worked at Majumdar's direction. For example, Majumdar directed Semons to set up Sebert Shipping as a Texas corporation, and she filed the necessary paperwork with the appropriate regulatory agencies to do so.

When Majumdar moved to Texas to run Sebert Shipping, he began treating Semons less favorably than male employees. After Semons refused to attempt

21

collection of certain tariffs, Majumdar began constantly yelling at, belittling, and embarrassing Semons in front of her coworkers. Majumdar eventually terminated her for refusing to collect the tariffs. Semons asserted three causes of action against Sarjak for gender discrimination, wrongful termination, and tortious interference with her employment contract.

In her response to Sarjak's special appearance, Semons argued that Sarjak directly hired her and is the sole owner of Sebert Shipping. *See Predator Downhole*, 504 S.W.3d at 402 (stating that plaintiff can meet initial burden to allege sufficient jurisdictional facts through its petition and special appearance response). As proof that Sarjak hired her, Semons relied on a September 2016 letter offering her employment. As proof that Sarjak is the sole parent company of Sebert Shipping, Semons relied on two franchise tax reports filed in Texas by Sebert Shipping. Both reports list Sarjak as the 100% owner of Sebert Shipping and list Majumdar as the sole officer of Sebert Shipping.

Semons's allegations and evidence in her petition and special appearance response satisfy the "doing business" requirement in the long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE § 17.042. Semons alleged that Sarjak conducts international shipping business in Texas, that it entered into an employment contract with her to work in Texas, that it employed her in Texas, and that it vicariously committed torts against her in Texas causing her harm in Texas. *See id.* (stating that

22

long-arm statute extends to nonresident "doing business" in Texas, which includes contracting with Texas resident where contract to be performed in Texas, committing tort in Texas, or recruiting Texas residents for employment in Texas).

Furthermore, the parties do not dispute that all of Semons's claims arise from the same forum contacts, and therefore these contacts meet Semons's pleading burden with respect to all of her claims against Sarjak. *See M & F Worldwide*, 512 S.W.3d at 886; *Moncrief Oil*, 414 S.W.3d at 150–51. Therefore, we conclude that Semons satisfied her initial burden to plead facts establishing personal jurisdiction over Sarjak for each of her claims asserted against it. *See Old Republic*, 549 S.W.3d at 559.

## D. Purposeful Availment

Because Semons satisfied her initial burden, the burden of proof shifted to Sarjak to negate all potential bases of jurisdiction. *See id.* Semons's allegations define the scope and nature of the lawsuit, and therefore Sarjak's "corresponding burden to negate jurisdiction is tied to" Semons's allegations. *See Kelly*, 301 S.W.3d at 658.

Sarjak challenges only the purposeful availment prong of personal jurisdiction, arguing that it lacks purposeful contacts with Texas. This is a challenge to the legal basis of jurisdiction. *See Old Republic*, 549 S.W.3d at 559 (stating that

defendant negates legal basis for jurisdiction by showing that even if jurisdictional allegations are true, evidence is legally insufficient to establish jurisdiction).

## 1. Imputed Forum Contacts

Sarjak primarily argues that Semons sued the wrong party because it did not hire or employ her. Sarjak argues that its parent company, Sarjak India,[4] actually hired Semons, but no evidence shows that Sarjak India's forum contacts can be imputed to Sarjak. It further argues that no evidence allows the contacts of Sebert Shipping, Sarjak's wholly owned Texas subsidiary, to be imputed to it either.

Texas law presumes that two separate corporations are distinct entities, although this presumption may be rebutted so that one entity's forum contacts may be imputed to the second entity. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173, 175 (Tex. 2007). For example, when a parent company and its subsidiary are alleged to be alter egos or in an agency relationship, one entity's forum contacts may be imputed to the other. *Id.* at 175; *BMC Software*, 83 S.W.3d at 798

---

[4] Sarjak argues on appeal that there is no evidence in the clerk's record supporting Semons's allegation that Sarjak India is the parent company of Sarjak. This is true, but it ignores the representation made by Sarjak's counsel to the county court during the hearing on its special appearance, which appears in the reporter's record, that Sarjak "is a fully owned subsidiary of this Sarjak India." This unchallenged judicial admission establishes that Sarjak India is Sarjak's parent company. *See In re Est. of Guerrero*, 465 S.W.3d 693, 705 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (stating that counsel's statements on behalf of client can constitute judicial admission that dispenses with production of evidence on issue and bars admitting party from disputing it).

("Personal jurisdiction may exist over a nonresident defendant if the relationship between the foreign corporation and its parent corporation that does business in Texas is one that would allow the court to impute the parent corporation's 'doing business' to the subsidiary.").

The Texas Supreme Court has formulated the following inquiry to determine whether a subsidiary's forum contacts can be imputed to the nonresident parent company for purposes of establishing personal jurisdiction over the parent:

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*PHC-Minden*, 235 S.W.3d at 175; *Cap. Fin. & Com. AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 80 (Tex. App.—Houston [1st Dist.] 2008, no pet.). To establish an alter-ego theory of jurisdiction, the plaintiff bears the burden to establish that "the parent corporation exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate identities but are one and the same corporation for purposes of jurisdiction." *PHC-Minden*, 235 S.W.3d at 173 (quoting *BMC Software*, 83 S.W.3d at 798) (internal quotation marks omitted).

### a. Contacts Imputed from Sebert Shipping

Sarjak and Semons dispute whether Sarjak's status as the sole parent company of Sebert Shipping suffices to impute Sebert Shipping's forum contacts to Sarjak. It is undisputed that Sebert Shipping is a Texas corporation formed by Semons at Majumdar's direction, and Semons worked at Sebert Shipping's Houston office. In response to Sarjak's special appearance, Semons introduced two franchise tax reports that were filed in Texas in 2018 and 2019 listing Sarjak as Sebert Shipping's sole parent company. The parties do not rely on any other evidence relevant to the issue of imputing Sebert Shipping's forum contacts to Sarjak.

As stated above, the relationship between a parent company and its wholly owned subsidiary alone is not sufficient to impute the subsidiary's forum contacts to the parent. *See BMC Software*, 83 S.W.3d at 798 (stating general rule that "courts will not because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, . . . protect fraud, or defend crime"). Rather, Semons was required to prove that Sarjak controls Sebert Shipping's internal business operations and affairs to a degree greater than that generally associated with common ownership and directorship. *See PHC-Minden*, 235 S.W.3d at 175. Neither the franchise tax reports nor any other record evidence establishes Sarjak's greater-

than-usual control over Sebert Shipping's operations. Therefore, we conclude that Sebert Shipping's forum contacts may not be imputed to Sarjak. *See id.*

### b. Contacts Imputed from Sarjak India

The parties primarily dispute whether Sarjak India's forum contacts can be imputed to Sarjak. Sarjak contends that the letter offering Semons employment proves that Sarjak India—and not Sarjak—hired Semons. Sarjak further argues that no evidence establishes that it hired or employed Semons, or that it controlled Sarjak India to the degree required to fuse the two entities for jurisdictional purposes. We note, however, that Sarjak does not argue that Sarjak India's Texas contacts, regardless of whether they can be imputed to Sarjak, are insufficient to subject Sarjak India to personal jurisdiction in Texas.

Semons disputes that she was employed by some entity other than Sarjak. She argues that Sarjak judicially admitted in its appellate brief that it is the same entity as Sarjak India. She also argues that she communicated daily with both Sarjak and Sarjak India, the two entities did not distinguish between themselves when communicating with her, and they shared directors, managers, and officers.

We disagree with Semons that Sarjak judicially admitted that it is the same entity as Sarjak India in its appellate brief. In its brief, Sarjak identified itself as a "foreign India-based defendant . . . ." Sarjak vehemently disputes that it made such a judicial admission, chalking it up to a drafting mistake that is inconsistent with the

27

section of its brief identifying the parties and their counsel. A judicial admission results when a party makes a deliberate, clear, and unequivocal statement of fact that conclusively disproves a right of recovery or defense. *Ledesma v. City of Houston*, 623 S.W.3d 840, 846 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). As Sarjak correctly notes, its brief also identifies Sarjak as a "company headquartered in Singapore," and therefore the statement referring to India is equivocal. *Cf. id.* Furthermore, even if Sarjak had clearly and unequivocally identified itself as an Indian entity, this is not a clear and unequivocal statement that it and Sarjak India are the same entity. *Cf. id.* Thus, we disagree with Semons that Sarjak judicially admitted it is the same entity as Sarjak India.

We also disagree with Semons that Sarjak India's contacts can be imputed to Sarjak because the two entities did not distinguish between themselves in their regular communication with Semons or because the two entities share directors, managers, and officers. Semons did not make these allegations in either her petition or her response to the special appearance. *See Old Republic*, 549 S.W.3d at 559 (stating that plaintiff bears initial burden to plead facts establishing jurisdiction); *Predator Downhole*, 504 S.W.3d at 402 (stating that plaintiff can satisfy initial pleading burden in either petition or special appearance response). These allegations define the scope and nature of Semons's lawsuit, and therefore Semons's jurisdictional allegations serve as the basis for Sarjak's corresponding burden to

28

negate jurisdiction. *See Kelly*, 301 S.W.3d at 658. Because Semons did not assert these jurisdictional allegations in the trial court, the burden of proof never shifted to Sarjak to negate them. *See Old Republic*, 549 S.W.3d at 559.

Sarjak argues that the letter offering employment to Semons proves that Sarjak India, a separate entity, hired Semons, and no record evidence establishes the degree of control between the two entities necessary to subject Sarjak to personal jurisdiction in this case. The letter includes the following relevant language. The letterhead states "Sarjak Container Lines," a phrase which appears in both Sarjak's and Sarjak India's similar names. Printed at the bottom of the letter is Sarjak India's name: "Sarjak Container Lines PVT. LTD." The letter thanks Semons for "understanding the role at Sarjak Container Lines Pvt Ltd." and informs her that her role will be "Manager—Commercial" and she will be stationed in Houston. The letter states that her "career at Sarjak Container Lines will be exciting, challenging and rewarding." Finally, the letter is signed by someone on behalf of Sarjak India and bears a stamp with Sarjak India's name and the word "Mumbai."

We agree with Sarjak that this letter alone does not support an alter ego theory of jurisdiction. We presume that Sarjak and Sarjak India are distinct entities for jurisdictional purposes. *See PHC-Minden*, 235 S.W.3d at 173; *BMC Software*, 83 S.W.3d at 798. This letter does not mention Sarjak. Nothing in the letter indicates that Sarjak India controls the internal business operations and affairs of Sarjak—or

vice versa—such that the two entities cease to be separate. *See PHC-Minden*, 235 S.W.3d at 175. Thus, the employment letter does not satisfy Semons's burden to overcome the presumption that Sarjak and Sarjak India are separate entities for jurisdictional purposes. *See id.* at 173.

### c. Contacts Imputed from Majumdar

We note, however, that other bases support personal jurisdiction over Sarjak. The thrust of Semons's complaint against Sarjak is that its employees' in-state tortious activity caused her harm, and Sarjak denies neither that its employees participated in the tortious activity nor that such activity constitutes sufficient minimum contact with Texas. As discussed below, Texas law allows an employee's forum contacts to be imputed to the employer.

Semons alleged that Majumdar hired her to oversee Sarjak's United States operations because Majumdar and Bigdeli "both lived overseas," making Semons "the only employee of Sarjak in the [] United States." Majumdar also controlled Semons's work. He directed her to complete the paperwork required to form Sebert Shipping as a Texas corporation, and she did so. When Majumdar's visa was approved and he moved to Texas, Semons found him an apartment and drove him to and from work for several months. Majumdar began treating Semons less favorably than a male colleague in a position inferior to Semons's position, including by having her directly report to the colleague, by giving up her larger office to the

30

colleague in exchange for a smaller office, and by being paid nearly half of the colleague's salary. Both Majumdar and the colleague treated her "very cruelly."

Sarjak ordered Semons to collect $500,000 in tariffs that went uncollected by Sarjak's prior agent. Semons learned that the paperwork required to collect the tariffs had not been filed, making the tariffs uncollectable, but Majumdar nevertheless demanded that Semons collect the tariffs anyway. Semons refused to collect the tariffs, which "enraged" Majumdar and caused him to yell at, belittle, and embarrass Semons in front of her coworkers. Semons was eventually terminated for refusing to collect the tariffs. She also alleged that these actions interfered with her employment contract.

It is well established that, "even without other contacts, jurisdiction would exist if [a foreign company] committed a tort while in the state." *Moncrief Oil*, 414 S.W.3d at 148 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314–15 (5th Cir. 2007)). Furthermore, Texas law recognizes an agency-based theory of imputed contacts, which allows forum contacts of an agent or employee to be imputed to the foreign principal. *Stocksy United v. Morris*, 592 S.W.3d 538, 547 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *Huynh v. Nguyen*, 180 S.W.3d 608, 622 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("The Texas contacts of agents or employees are attributable to their nonresident principals."). Sarjak does not mention or dispute any of these jurisdictional allegations regarding its employees'

in-state tortious activity. *See Old Republic*, 549 S.W.3d at 559 (stating that nonresident defendant bears burden to negate all bases of personal jurisdiction alleged by plaintiff).

The commission of these torts was purposeful, not random, fortuitous, or attenuated. *See Old Republic*, 549 S.W.3d at 559. Sarjak was not unilaterally haled into making these contacts, but rather it sent Majumdar to Texas and, while in Texas, Majumdar allegedly committed torts against Semons. *See Moncrief Oil*, 414 S.W.3d at 153 (stating that foreign defendant's Texas contacts were purposeful, not random, fortuitous, or unilateral activities of third party, because defendant agreed to attend meetings in Texas at which it accepted trade secrets that it later allegedly misappropriated).

Moreover, the entire series of events that Semons complains about occurred because Sarjak desired to form a Texas subsidiary to conduct international shipping business. This shows that Sarjak sought and obtained a benefit, advantage, and profit by availing itself of the privilege of conducting activities in Texas, thus invoking the benefits and protections of its laws. *See id.* (stating that defendant's contacts were purposeful and substantial because the activity "was aimed at getting extensive business in or from the forum state") (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 789–90 (Tex. 2005)). We therefore conclude that

32

Majumdar's forum contacts are properly imputed to Sarjak, and these purposeful forum contacts subject Sarjak to personal jurisdiction in Texas courts.

## 2. Other Forum Contacts

There are other forum contacts alleged by Semons that Sarjak either did not address or did not rely on any evidence to negate.[5]

### a. Conducting Business, Advertising, Registering Corporation, and Having Registered Agent in Texas

Sarjak argues that it does not conduct business in Texas, does not advertise in Texas, is not a registered entity in Texas, and does not have a registered agent for service of process in Texas. To support these arguments on appeal, Sarjak relies solely on a "Taxable Entity Search" page on the website of the Texas Comptroller of Public Accounts. *See Taxable Entity Search*, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, https://mycpa.cpa.state.tx.us/coa (last visited August 1, 2022). In a parenthetical, Sarjak directs the Court to "see" the "search" there without providing any parameters to conduct a search for information that might support its arguments. Nor does Sarjak otherwise explain how the website supports its arguments.

---

[5] On appeal, Semons argues that Sarjak submitted to jurisdiction in Texas by participating in mediation of her discrimination and retaliation claims. Semons did not assert this jurisdictional allegation in the trial court, and therefore it was not a basis for jurisdiction that Sarjak was required to negate. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) (stating that burden shifts to nonresident defendant to negate jurisdictional allegations only after plaintiff meets initial burden to plead sufficient jurisdictional allegations).

On the website, a user can search for a taxable entity by tax ID, entity name, or file number. *See id.* A search of "Sarjak" on the website reveals one entity, Sarjak Enterprises Inc., a corporation formed in California. *See id.* This result lists the entity's taxpayer number, mailing address, state of formation, registered agent's name and address, "Effective SOS Registration Date," "Texas File Number," and whether the entity has a right to transact business in Texas. *See id.* Presumably, these results are provided for every listed entity, although there is no indication whether all this information is provided for every listed entity or whether any additional information is provided for some entities. Regardless, these results say nothing about whether Sarjak advertises in Texas—an allegation Semons does not make—or whether Sarjak conducts any business in Texas even if it does not have a right to transact business here. *See id.* Thus, we cannot say this evidence negates jurisdiction based on conducting business in Texas.[6] *See Old Republic*, 549 S.W.3d at 559.

### b.   Communications

Finally, Semons alleged that Sarjak communicated with her while in Texas, directly and through Majumdar. She alleged that she was the only Sarjak employee in Texas before Majumdar moved there, and that Majumdar directed her work from

---

[6]   We note that the declaration of Sarjak India's president, upon which Sarjak's special appearance partially relied, denied that Sarjak conducted business in Texas. But Sarjak did not rely on this declaration to support its argument on appeal that it did not conduct business in Texas.

overseas. Her communications with Sarjak included having her set up Sebert Shipping as Sarjak's wholly owned Texas subsidiary. Semons also communicated with Sarjak about the issues she encountered while attempting to collect tariffs that Sarjak's prior agent failed to collect. Sarjak in turn communicated with a tariff company and its legal counsel before advising Semons that she could not collect the tariffs.

We look to the quality and nature of communications between a resident and nonresident to determine whether the communications establish purposeful availment. *Old Republic*, 549 S.W.3d at 560; *see Michiana*, 168 S.W.3d at 790–92 (disapproving of direct-a-tort theory under which specific jurisdiction is necessarily established merely by allegations or evidence that nonresident directed tort at Texas resident from another state). Sarjak's communications with Semons concerned her employment and the collection of tariffs owed to Sarjak. Sarjak does not dispute that these communications are purposeful contacts with Texas that are substantially related to the operative facts of the litigation. *See Old Republic*, 549 S.W.3d at 559. Therefore, Sarjak did not negate Semons's jurisdictional allegations regarding communications between Sarjak and Semons. *See id.*

### 3. Substantial Connection and Fair Play and Substantial Justice

Sarjak does not dispute that its forum contacts are substantially related to the operative facts of Semons's claims. *See Moki Mac*, 221 S.W.3d at 585 (holding that

35

nonresident defendant's purposeful forum contacts must be substantially connected to operative facts of litigation to confer specific personal jurisdiction on defendant).

Nor does Sarjak dispute that exercising jurisdiction over it would not offend "traditional notions of fair play and substantial justice." *See Old Republic*, 549 S.W.3d at 559 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Because Sarjak "purposefully avail[ed] itself of the privilege of conducting activities [in Texas], thus invoking the benefits and protections of its laws," we conclude that the trial court did not err by denying Sarjak's special appearance. *See id.* (quoting *Retamco Operating*, 278 S.W.3d at 338).

We overrule Sarjak's sole issue on appeal.

## Conclusion

We affirm the county court's order denying Sarjak's special appearance.

April L. Farris
Justice

Panel consists of Justices Landau, Guerra, and Farris.